IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PENSION BENEFIT GUARANTY CORPORATION,**<br><br>*Plaintiff,*<br><br>v.<br><br>**FAY CONSTRUCTION CO., INC. and FAY DEVELOPMENT COMPANY, INC.,**<br><br>*Defendants.* | Case No. 2:24-cv-1860-JDW |

## MEMORANDUM

Fay Construction Co., Inc. and Fay Development Company, Inc. ("Fay Defendants") failed to make required pension plan payments, ignored a settlement agreement that they entered with the Pension Benefit Guarantee Corp. ("PBGC"), and failed to respond to this lawsuit. I will therefore enter default judgment against them and award PBGC both injunctive and declaratory relief and the costs of litigation.

I.  **BACKGROUND**

   A.  **Facts**

Fay Construction and Fay Development are each corporations organized under the laws of Delaware and located in Media, Pennsylvania. Fay Development is a member of Fay Construction's controlled group. On January 1, 1985, Fay Construction established a pension plan (the "Pension Plan"), which, until its termination, was a single-employer

pension plan that Fay Construction administered. The pension plan termination program under Title IV of the Employee Retirement Income Security Act ("ERISA") covered the Pension Plan.

PBGC is a federal government agency that administers ERISA's pension insurance program. PBGC guarantees the payment of retirement benefits to members of pension plans that terminate while ERISA covers them. For pension plans under its coverage, PBGC has the power to initiate termination on plans that, among other things, lack sufficient assets to pay plan members their accrued benefits.

On June 14, 2017, PBGC issued notice to Fay Construction that the Pension Plan should be terminated for lack of sufficient assets. That same day, PBGC filed a civil action to terminate the Pension Plan, establish the termination date as June 14, 2017, and have the PBGC appointed as the statutory trustee of the Pension Plan.[1] As of June 14, 2017, PBGC contended that Fay Defendants owed $1,529,572.00 in Unfunded Benefits Liabilities ("UBL") and $19,403.37 in Premium Liabilities. On June 14, 2021, PBGC and Fay Construction entered into a trusteeship agreement, which terminated the Pension Plan, established the termination date as June 14, 2017, and appointed PBGC the statutory trustee of the Pension Plan.

---

[1] The civil action is captioned *Pension Benefit Guaranty Corporation v. Fay Construction Co., Inc.*, Case No. 2:17-cv-2733 (GEKP).

Effective June 6, 2022, PBGC and the Fay Defendants entered into a settlement agreement (the "Settlement Agreement"). Section 3(a) of that Agreement requires the Fay Defendants to use their best efforts to renovate and sell a rental property (the "Rental Property") within six months. Section 3(b) of the Agreement requires Fay Defendants to give PGBC semi-annual progress reports on the renovation and sale of the Rental Property. Sections 3(f) and (c), respectively, require the Fay Defendants to sell the Rental Property for no less than $319,000.00, and to pay the first $319,000.00 (the "Termination Liability Settlement Amount") in net proceeds of the sale to PBGC. Section 3(i) requires the Fay Defendants to start paying PBGC monthly rent of $1,525 if the Rental Property is not sold within a year.

The Fay Defendants have not done anything to renovate and sell the Rental Property, they have not given PBGC semi-annual progress updates, and they have not paid monthly rent on the Rental Property. Each violation constitutes an Event of Default, per Section 8(a) of the Settlement Agreement.

B.   **Procedural History**

PBGC filed its Complaint on May 1, 2024. On May 23, 2024, this case was reassigned from the late Judge Gene E.K. Pratter to me. On May 31, 2024, PBGC filed a certificate of service certifying that it served the Order reassigning the case by Federal Express and first-class mail on the Fay Defendants. On June 4, 2024, the Pennsylvania State Constable filed proof of service for the Fay Defendants. PBGC requested an entry of default on June 7,

2024, which the Clerk of Court entered on June 10, 2024. On July 24, 2024, PBGC filed this motion seeking a default judgment. PBGC seeks $1,529,572 in UBL, $19,403.37 in Premium Liability, unpaid monthly rent on the Rental Property of $1,525 since June 6, 2023, fees and costs of this suit, a declaration that the Settlement Agreement is enforceable, and a permanent injunction requiring specific performance of the Settlement Agreement's obligations.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a district court to enter a default judgment against a properly served defendant who fails to appear. *See* FED. R. CIV. P. 55(b)(2). To obtain a default judgment pursuant to Rule 55(b)(2), a litigant must first obtain an entry of default from the Clerk of Court pursuant to Rule 55(a). Then, the district court has discretion as to whether to grant a motion for a default judgment. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). Before entering default judgment, a court must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Id.* (citation omitted). A court need not find all three factors satisfied to award a default judgment.

The Third Circuit also requires consideration of the *Poulis* factors "when a district court enters a default judgment pursuant to Rule 55(b) as a sanction for failure to plead or otherwise defend." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) (internal

4

citation omitted). Thus, in addition to the *Chamberlain* factors, a court must also consider: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. *Id.* at 409 n.2 (quoting *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).

In deciding a motion for default judgment, "the factual allegations in a complaint, other than those as to damages, are treated as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). However, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Butler v. Experian Info. Sols.*, No. CV 14-07346, 2016 WL 4699702, at *2 (E.D. Pa. Sept. 7, 2016) (*quoting* 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688.1 (4th ed.)).

### III.   DISCUSSION

#### A.   *Chamberlain* **And** *Poulis* **Factors**

Consideration of the *Chamberlain* and *Poulis* factors demonstrates that default judgment is warranted. *First*, PBGC would suffer substantial prejudice if I were to deny it a default. It has no other recourse to enforce both its statutory rights and its rights under the Settlement Agreement. *Second*, the Fay Defendants have not appeared or otherwise

made any representations, so I have no basis to conclude that they have a litigable defense. It does appear that they have defaulted under the Settlement Agreement. *Third*, the Clerk entered default in this case after the Defendants failed to plead, answer, or otherwise respond to the suit. The Defendants have provided no excuse for the delay, even though they were served with the Complaint by the Pennsylvania State Constable, demonstrating they are aware of the lawsuit. *Fourth*, this conduct is consistent with the way that the Fay Defendants have acted. They first got into trouble by failing to make required pension plan payments. Then, they ignored obligations under the Settlement Agreement. Now, they've ignored obligations to respond to court filings, too. From all that, I infer that their conduct is willful. Thus, the great weight of relevant factors warrants entry of a default judgment.

    **B.    Merits Of Claims**

        **1.    UBL**

"In any case in which a single-employer plan is terminated in a distress termination under section 1341(c) of this title or a termination otherwise instituted by the corporation under section 1342 of this title, any person who is, on the termination date, a contributing sponsor of the plan or a member of such a contributing sponsor's controlled group shall incur liability under this section. The liability under this section of all such persons shall be joint and several." 29 U.S.C. § 1362(a). "[T]he liability to the corporation of a person described in subsection (a) shall be the total amount of the unfunded benefit liabilities (as

of the termination date) to all participants and beneficiaries under the plan, together with interest (at a reasonable rate) calculated from the termination date in accordance with regulations prescribed by the corporation." 29 U.S.C. § 1362(b)(1)(A).

PBGC has pled facts to establish that the Fay Defendants are jointly and severally liable under section 1362(a) and (b). PBGC terminated the Pension Plan under section 1342's authority. Fay Construction is the Pension Plan's contributing sponsor. Fay Development is in Fay Construction's controlled group. At the time of termination, the present value of the Pension Plan's benefit liabilities was $1,529,572, and Plan had no assets. The Fay Defendants are therefore jointly and severally liable for the UBL liabilities in the amount of $1,529,572, plus pre-judgment interest.

### 2.  Premium liabilities

Under 29 U.S.C. § 1307, the term "designated payor" means the contributing sponsor in the case of a single-employer plan. *See* 29 U.S.C. § 1307(e)(1)(A). "If the contributing sponsor of any single-employer plan is a member of a controlled group, each member of such group shall be jointly and severally liable for any premiums required to be paid by such contributing sponsor." 29 U.S.C. § 1307(e)(2). "The designated payor of each plan shall pay the premiums imposed by the corporation under this subchapter with respect to that plan when they are due." 29 U.S.C. § 1307(a). "Premiums shall continue to accrue until a plan's assets are distributed pursuant to a termination procedure, or until a trustee is appointed pursuant to section 1342 of this title, whichever is earlier." 29 U.S.C.

§ 1307(a). For the termination of a single-employer plan under 29 U.S.C. § 1342, "there shall be payable to the corporation, with respect to each applicable 12-month period, a premium at a rate equal to $1,250 multiplied by the number of individuals who were participants in the plan immediately before the termination date. Such premium shall be in addition to any other premium under this section." 29 U.S.C. § 1306(7)(A).

PBGC has pled facts to establish that the Fay Defendants are jointly and severally liable under Section 1307. Fay Construction is the Pension Plan's contributing sponsor, and Fay Development is in Fay Construction's controlled group. PBGC initiated the termination under Section 1342, and the Pension Plan's termination date was June 14, 2017. PBGC was appointed as the trustee of the Pension Plan on June 14, 2021. The Pension Plan was a single-employer plan with four participants. As of the date of termination, the Fay Defendants owed $4,403.37 in premiums. In addition, they owed $15,000 to PBGC in total termination premiums for the three years following the termination of the Pension Plan. Thus, the Fay Defendants owe PBGC a total premium liability of PBGC is $19,403.37, plus interest and penalties.

### 3. Declaration that the Settlement Agreement is enforceable

Section 1367 states that "the corporation is authorized to make arrangements with contributing sponsors and members of their controlled groups who are or may become liable under section 1362 . . . of this title for payment of their liability, including arrangements for deferred payment of amounts of liability to the corporation accruing as

of the termination date on such terms and for such periods as the corporation deems equitable and appropriate." 29 U.S.C. § 1367. The powers of an appointed trustee include the ability to "collect for the plan any amounts due the plan including but not limited to the power to collect from the persons obligated to meet the requirements of section 1082 of this title or the terms of the plan." 29 U.S.C. § 1342(d)(1)(B)(ii). Basic contract principles apply to settlement agreements. *See Williams v. Metzler*, 132 F.3d 937, 946 (3d Cir. 1997). "'The only essential prerequisite' for a binding valid settlement agreement is that the parties must 'mutually assent to the terms and conditions of the settlement.'" *Roscoe v. Watco Companies, LLC*, No. 15-CV-2118, 2018 WL 8345101, at *7 (E.D. Pa. Nov. 9, 2018) (quoting *Pugh v. Super Fresh Food Markets, Inc.*, 640 F. Supp. 1306, 1308 (E.D. Pa. 1986)).

The Settlement Agreement is valid, binding, and enforceable. The parties mutually agreed to its terms. The managing partner of Fay Construction and Fay Development Stephen J. Fay voluntarily entered into the agreement, assented to the terms, and signed it. The agreement was also signed by the Deputy Director of PBGC's Corporate Finance and Restructuring Division Robert D. Bacon, who as a representative of PBGC, had the authority under 29 U.S.C. § 1367 to enter into the Settlement Agreement.

### 4.     Injunctive relief

To grant a permanent injunction, a court must consider whether: (1) the plaintiff has shown actual success on the merits; (2) the plaintiff will be irreparably injured by the denial of injunctive relief; (3) the permanent injunction will result in even greater harm to

the defendant; and (4) the injunction would be in the public's interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006); *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

PBGC has demonstrated actual success on the merits because it has established that Fay Defendants violated the Settlement Agreement. PBGC will suffer irreparable harm without injunctive relief because it will be unable to compel, and track the progress of, the sale of the Rental Property. Furthermore, granting injunctive relief would not result in greater harm to Fay Defendants, as injunctive relief would only be enforcing the terms of the mutually agreed upon Settlement Agreement. Lastly, it is in the public's interest to require parties to hold up their end of settlement agreements. I will enter a permanent injunction ordering Fay Defendants to comply with Sections 3(a), 3(b), and 3(f) of the Settlement Agreement.[2]

### 5. Rent

Section 3(i) of the Settlement Agreement requires Fay Defendants to pay monthly rent of $1,525.00 on the Rental Property starting June 6, 2023, if the Rental Property remained unsold. Accordingly, Fay Defendants must pay past-due monthly rent of $1,525.00 from June 6, 2023, plus pre-judgment interest. Additionally, the Fay Defendants are to pay $1,525.00 in monthly rent, per the terms of the Settlement Agreement, until the closing of the sale on the Rental Property.

---

[2] Because I'm granting injunctive relief, there's no need for liquidated damages.

### 6. Fees and costs under 29 U.S.C. § 1303(e)(5)

"In any action brought under this subchapter, whether to collect premiums, penalties, and interest under section 1307 of this title or for any other purpose, the court may award to the corporation all or a portion of the costs of litigation incurred by the corporation in connection with such action." 29 U.S.C. § 1303(e)(5). Given the Fay Defendants decisions to ignore obligations time and again, I conclude that an award of attorneys' fees and costs is appropriate.

## IV. CONCLUSION

The Fay Defendants have ignored their obligations time and again. PBGC has pled facts that entitle it to declaratory relief, injunctive relief, and award of litigation costs, which I will enter. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

October 31, 2024